# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

ROMONDA SOUTHALL # 367-236  \*
    Petitioner,

v.     \*    CIVIL ACTION NO. PWG-13-3642

WAYNE A. WEBB, et al.,    \*
    Respondents.

\*\*\*\*\*

## MEMORANDUM OPINION

Petitioner Romonda Southall, a prisoner in the Maryland Correctional Institution, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. Pet., ECF No. 1, as supplemented, Suppl. Pet., ECF No. 9. Respondents filed a response, Resp., ECF No. 7, to which Southall has replied, Reply, ECF No. 8; Suppl. Reply, ECF No. 10. After reviewing the parties' submissions, I find no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. §2254(e)(2). Because Southall's claim is not cognizable and, even if it were cognizable, the claim provides no basis for federal habeas relief, the petition IS DENIED and a certificate of appealability WILL NOT ISSUE.

### Procedural History

Southall seeks to invalidate his convictions in the Circuit Court for Charles County for burglary, theft, conspiracy, and related offenses for which he is serving a twelve year sentence. Pet. 2–3. Southall claims he was not tried within 120 days, in violation of Article IV(c) of the Interstate Agreement on Detainers ("Detainer Agreement") provision adopted by Maryland and codified at Corr. Servs. Art. 8-406(c). Pet. 3, 6.

The facts and procedural history of his case were summarized by the Court of Special Appeals of Maryland as follows:

> In the early morning hours of February 22, 2007, appellant and a companion were stopped on Route 301, northbound, in Charles County, following the report of a break-in and theft at Hugh C. Gardiner, Inc., a lawn and garden center. The cargo area of the van in which appellant was a passenger was found to contain the stolen lawn and garden equipment; smears of appellant's blood were found on the exterior of the van; and a sledgehammer and flashlight were found inside the van. On March 16, 2007, appellant was indicted by a Charles County grand jury and charged with second-degree burglary, theft over $500.00, malicious destruction of property over $500.00, conspiracy to commit second-degree burglary, and three counts of fourth-degree burglary. [Footnote omitted]. Trial on these charges was set for June 18, 2007.
>
> On June 18, 2007, the court continued the trial date to July 26, 2007. But, due to a power failure at the courthouse, the July date was continued to October 18, 2007. Appellant failed to appear on October 18, and a bench warrant was issued. Appellant's then-counsel filed a motion to recall the warrant, and a hearing was scheduled for November 30, 2007. Appellant failed to appear.
>
> Appellant was located, and the warrant was served on April 16, 2008. Appellant's trial on these charges was scheduled for July 22, 2008, with pre-trial motions set for June 26, 2008. Appellant failed to appear.
>
> It is undisputed that appellant was arrested in Rockingham County, Virginia, on June 5, 2008. On May 1, 2009, he pled guilty to grand larceny in that jurisdiction, and was sentenced to five years.
>
> On May 28, 2009, the Charles County Sheriff's Office faxed a document regarding the appellant to the Henrico County jail in Virginia.[3] The document states, in bold capital letters, "PLEASE FILE THIS NOTIFICATION AS A DETAINER." It further requested that Henrico County "advise when [appellant] is ready for release and an officer will be dispatched to take custody."
>
> For reasons that are unclear from the record, appellant was subsequently held in custody in the Northampton County jail in Easton, Pennsylvania. On December 10, 2009, the Commonwealth of Virginia Department of Corrections lodged a detainer against appellant with that facility. The detainer stated, in pertinent part, "If [appellant] is transferred to another facility, please forward our [detainer] to that facility. Please notify this office thirty days prior to the subject's release date; *Virginia will extradite*." (Emphasis in original.)
>
> At some point on or before August 4, 2010, the Charles County Sheriff's Office learned that Pennsylvania no longer needed to keep appellant in custody. On

>August 4, 2010, Charles County deputies drove to Pennsylvania, took custody of appellant, and returned him to Charles County, where, on August 5, he was arraigned. At that time, a trial date of December 22, 2010, was set, with pretrial motions scheduled for October 22, 2010. It appears from the docket entries that appellant requested a continuance of the October 22 motions hearing, which was granted. Motions were re-set to be heard December 3, 2010, while the trial date remained the same.
>
>On December 3, 2010, appellant, for the first time, asserted that, under the [Detainer Agreement], he was entitled to have the Maryland charges against him dismissed because the State failed to bring him to trial within the [Detainer Agreement]'s 120-day deadline. Appellant argued that the State of Maryland had assumed "temporary custody" of him on August 4, 2010. Therefore, appellant argued, pursuant to § 8-406(c), the State had just 120 days from his "arrival . . . in the receiving state" to commence appellant's trial. At the conclusion of the hearing on the issue, the court denied appellant's motion to dismiss, finding that appellant "is not here as a result of a request for temporary custody," and that therefore, the 120-day timing provisions of § 8-406(c) were not triggered.
>
>Trial commenced on December 22, 2010, and the jury found appellant guilty of 2nd-degree burglary, theft of property valued at more than $500.00, conspiracy to commit 2nd-degree burglary, and two counts of 4th-degree burglary/possession of burglar's tools.
>
>_____
>³ It is not clear from the record why appellant was in jail in Henrico County.

*Southall v. Maryland*, No. 2727, at *2–5 (Md. Ct. Spec. App. July 31, 2012). On January 5, 2011, the trial court sentenced Southall to serve twelve years in prison. *Maryland v. Southall*, No. 08K07000207 (Cir. Ct. Charles Cnty. filed Mar. 16, 2007).[1]

On direct appeal, Southall raised claims concerning the sufficiency of the evidence and trial court error regarding a statement to police of Southall's accomplice. App. Br., 23, 28, Resp., Ex. 3, ECF No. 7-3. Southall also argued that the motions judge erred in denying his motion to dismiss for violation of the Detainer Agreement. *Id.* at 3. In an unreported opinion filed on July 31, 2012, the Court of Special Appeals affirmed the judgment of conviction against Southall, finding, among other things, that there was no violation of the Interstate Agreement on

---

[1] The record for this case is available through the Maryland Judiciary Case Search (http://casesearch.courts.state.md.us/casesearch/).

3

Detainers ("Detainer Agreement"). *Southall*, No. 2727 at *2. Southall then filed a *pro se* petition for a writ of certiorari, asking the Court of Appeals of Maryland to review the same claims presented to the Court of Special Appeals. ECF No. 7-6. On November 19, 2012, the Court of Appeals denied Southall's request for further review. *Southall v. Maryland*, 55 A.3d 908 (Table) (Md. 2012).

Southall's judgment became final for direct appeal purposes on February 19, 2013. *See* Sup. Ct. Rule 13.1 (requiring petition for a writ of certiorari to be filed within 90 days of the date of judgment from which review is sought). Southall has not sought post-conviction review in the Charles County Circuit Court. *See* ECF No. 7-1.

On December 3, 2013, Southall filed this petition, asserting that his conviction should be invalidated because he was not tried within 120 days as required pursuant to the Detainer Agreement. Pet.; Pet.'s Mem., ECF No. 1-1. Respondents argue that the claim "does not assert a cognizable basis for federal habeas corpus relief." Resp. 6. Alternatively, respondents contend the claim is not exhausted or, if exhausted, does not survive review on the merits. *Id.* at 7.

**Analysis**

The Detainer Agreement is an agreement among 48 states, the District of Columbia, and the United States that "creates uniform procedures for lodging and executing a detainer." *Alabama v. Bozeman*, 533 U.S. 148, 148 (2001). It further "enables a participating [state] to gain custody of a prisoner incarcerated in another jurisdiction, in order to try him on criminal charges." *See Reed v. Farley,* 512 U.S. 339, 341 (1994). The Detainer Agreement was designed, in part, to protect prisoners against whom detainers are issued from being denied prison privileges and rehabilitation efforts, *see United States v. Mauro,* 436 U.S. 340, 353 (1978), and

4

creates uniform procedures for resolving one State's pending charges against an individual imprisoned by another State, *see id.* at 355; *Bozeman,* 533 U.S. at 148.

Article III extends to prisoners against whom a detainer is lodged the right to demand final disposition on the pending charges within 180 days of release to the charging jurisdiction unless good cause exists for a continuance. 18 U.S.C. App. 2, § 2, Art. III(a). Article IV gives "the jurisdiction in which an untried indictment, information, or complaint is pending" the right "to have a prisoner against whom" it "has lodged a *detainer* . . . made available" for trial. *Id.* at Art. IV(a) (emphasis added). If it secures custody of the prisoner, the state that lodged the detainer (the "receiving state") must bring the prisoner to trial within 120 days. *Id.* at Art. IV(c). An "anti-shuttling provision" further requires the receiving state to retain custody of the prisoner until disposition of the charges. *See id.* at Art. IV(e). Absent a waiver, transfer of the prisoner back to the sending state results in dismissal with prejudice of the charges pending in the receiving state. *Id.*; *see also Mauro,* 436 U.S. at 352–53; *Bozeman,* 533 U.S. at 156 (holding that the Detainer Agreement commands dismissal of charges even for a one-day transgression of the anti-shuttling provision).

Before examining Southall's claim, I must determine whether the claim is cognizable under the federal habeas statute and if so, whether it is exhausted. The latter determination is apparent: Southall raised his Detainer Agreement claim on direct appeal, App. Br., and in seeking certiorari to the Court of Appeals of Maryland, ECF No. 7-6. The claim is exhausted for the purpose of federal habeas corpus review. Because Southall no longer seeks to pursue his unexhausted claims that his convictions were obtained through violations of due process or equal protection, *see* ECF No. 9, the petition need not be dismissed as a "mixed" petition containing both exhausted and unexhausted claims. *See Rose v. Lundy*, 455 U.S. 509, 509 (1982).

Although voluntary, the Detainer Agreement is congressionally sanctioned and thus deemed to comprise federal law subject to federal construction. *See Carchman v. Nash,* 473 U.S. 716, 719 (1985); *Cuyler v. Adams,* 449 U.S. 433, 438 (1981). Nonetheless, the circuits are split as to the cognizability of federal habeas corpus claims based on alleged violations of the Detainer Agreement. This Circuit holds with the First, Second, Sixth, Eighth and Tenth circuits,[2] which have concluded that Detainer Agreement claims "do not constitute fundamental defects and are not generally cognizable under federal habeas corpus provisions absent a showing of prejudice." *Kerr v. Finkbeiner,* 757 F.2d 604, 607 (4th Cir. 1985).

Southall does not claim that violation of the Detainer Agreement undermined the fact-finding process by which he was convicted. Instead, he notes that the Commonwealth of Virginia has issued a detainer for his return upon the completion of his Maryland sentence and argues that the shadow of his uncompleted Virginia sentence has cast a pall on his eligibility for honor housing and various programs for which he otherwise would be entitled. Reply 5. This hardship is neither unconstitutional nor atypical, *see Sandin v. v. Conner*, 515 U.S. 472, 484 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest), and in any event prisoners do not have a constitutionally protected right to programming or job assignments while incarcerated, *Awalt v.*

---

[2] *See Fasano v. Hall,* 615 F.2d 555, 558 (1st Cir.), *cert. denied,* 449 U.S. 867 (1980) (alleged violation of Article III(a) 180-day time provision and other alleged Detainer Agreement violations not cognizable under 28 U.S.C. § 2254 as they did not constitute fundamental defects); *Edwards v. United States,* 564 F.2d 652 (2d Cir.1977) (per curiam) (alleged violation of Article IV(e) trial-before-return provision not cognizable under 28 U.S.C. § 2255 because there was no "complete miscarriage of justice" or "exceptional circumstances"); *Mars v. United States,* 615 F.2d 704, 707 (6th Cir.), *cert. denied,* 449 U.S. 849 (1980) (alleged violations of Article IV(e) trial-before-return provision and Article IV(c) 120-day time limit not cognizable under 28 U.S.C. § 2255 as petitioner failed to show actual prejudice); *Huff v. United States,* 599 F.2d 860, 863 (8th Cir.), *cert. denied,* 444 U.S. 952 (1979) (alleged violation of Article IV(e) trial-before return provision not cognizable under 28 U.S.C. § 2255 absent a showing of prejudice); *Greathouse v. United States,* 655 F.2d 1032, 1034 (10th Cir. 1981), *cert. denied,* 455 U.S. 926 (1982) (same).

*Whalen*, 809 F. Supp. 414, 416–17 (E. D. Va. 1992); *Altizer v. Paderick*, 569 F.2d 812, 812–13 (4th Cir. 1978) (per curiam). Southall further complains that the Commonwealth of Virginia does not intend to credit him with the time served in Maryland. Reply 5. Examination of this sentencing computation question is best reserved for the Virginia courts.

For these reasons, Southall's Detainer Agreement claim is not cognizable. Even if it were cognizable, however, the claim provides no basis for federal habeas relief. "The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 87 (2011). An application for writ of habeas corpus may be granted only "on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "If an application includes a claim that has been 'adjudicated on the merits in State court proceedings,' [28 U.S.C.] § 2254(d), an additional restriction applies." *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011). That restriction limits the availability of a habeas corpus remedy to situations where the state adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* (quoting 28 U.S.C. § 2254(d)(1)-(2)). The Supreme Court has described these standards as "difficult to meet," *Richter*, 562 U.S. at 102, and "highly deferential," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). "[P]etitioner carries the burden of proof." *Pinholster*, 131 S. Ct. at 1398.

As to § 2254(d)(1), "[i]n this context, 'clearly established law' signifies 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" *Howes v. Fields*, 132 S. Ct. 1181,

7

1187 (2012) (citation omitted). "And an 'unreasonable application of' those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). Indeed, the "state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if 'reasonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Id.* (citation omitted).

In addition, under 22 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." This standard is "arguably more deferential" to state courts than the one set out in 28 U.S.C. § 2254(d)(2). *Wood*, 588 U.S. at 301. Though the Supreme Court has expressly declined to "define[] the precise relationship between 28 U.S.C. § 2254(d)(2) and § 2254(e)(1)," *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013), the Fourth Circuit has explained that "[b]oth provisions apply independently to all habeas petitions," *Winston v. Kelly*, 592 F.3d 535, 555 (4th Cir. 2010). Accordingly, where a petitioner's claim was previously adjudicated on the merits by a state court the petitioner must demonstrate both that a "state court's [factual] finding was incorrect by clear and convincing evidence, *and* that [it] was objectively unreasonable in light of the record before the court." *Id.* (internal citations omitted). "Where the state court conducted an evidentiary hearing and explained its reasoning

with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).

In rejecting Southall's claim on direct appeal, the Court of Special Appeals found as follows:

> In *State v. Pair*, 416 Md. 157 (2010), the Court of Appeals reviewed The history of the [Detainer Agreement], and stated: "In short, the purpose of the [Detainer Agreement] is to facilitate speedy disposition of charges underlying detainers." *Id.* at 162. There are "two procedures designed to effectuate its purpose." *Id.* The first is Article III of the [Detainer Agreement], codified in Maryland law at § 8-405. That provision is triggered by a request by the inmate for "a final disposition to be made" on the charges underlying an inmate's detainer. That was the topic with which the Court of Appeals was concerned in *Pair*. It is undisputed that appellant herein made no such request, and the time limits imposed by § 8-405 were not implicated.
>
> But appellant contends that the State was required to commence his trial within 120 days after his arrival in Maryland, as required by Article IV of the [Detainer Agreement], codified in § 8-406 That statute provides, in pertinent part:
>
>> (a) The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have the prisoner against whom the officer has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with § 8-407(a) of this subtitle (Article V(a) of the Agreement) *upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated*; provided that the court having jurisdiction of the indictment, information, or complaint shall have duly approved, recorded, and transmitted the request; and provided further that there shall be a period of 30 days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability either upon the governor's own motion or upon motion of the prisoner.
>>
>> (b) Upon receipt of the officer's written request as provided under subsection (a) of this section, the appropriate authorities having the prisoner in custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole

9

eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. The authorities simultaneously shall furnish all other officers and appropriate courts in the receiving state who have lodged detainers against the prisoner with similar certificates and with notices informing them of the request for custody or availability and of the reasons therefor.

(c) *In respect of any proceeding made possible by this section (Article IV of the Agreement), trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state*, but for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

* * *

(e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment under § 8-407(e) of this subtitle (Article V(e) of the Agreement), the indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the indictment, information, or complaint with prejudice.

(Emphasis added.)

In the instant case, appellant argued that the detainer lodged by Maryland with the Virginia authorities was equivalent to the "written request for temporary custody or availability" contemplated by § 8-406(a), and he asserts that, because Maryland made such a written request, Maryland was required to try appellant within 120 days of his return to Maryland, or see the indictments dismissed. The motions court disagreed, finding that the 120-day time limit of § 8-406(c) had not been triggered because appellant was not in Maryland pursuant to an 8-406(a) request for temporary custody. We agree with the motions court.

Contrary to appellant's argument, a "detainer" and a "written request for temporary custody or availability" are two different events, both of which must occur in order to trigger the 120-day time limit imposed by § 8-406(c). Only when the receiving state has both filed a detainer *and* made a written request for temporary custody or availability are the time limits of § 8-406 activated.

In *United States v. Mauro*, 436 U.S. 340 (1978), the Supreme Court noted that the [Detainer Agreement] prescribes

> procedures by which a member State may obtain for trial a prisoner incarcerated in another member jurisdiction and by which the prisoner may demand the speedy disposition of certain charges pending against him in another jurisdiction. In either case,

> however, the provisions of the [Detainer Agreement] are triggered only when a "detainer" is filed with the custodial (sending) State by another State (receiving) having untried charges pending against the prisoner; *to obtain temporary custody, the receiving State must also file an appropriate "request" with the sending State*.
>
> * * *
>
> Article IV provides the means by which a prosecutor who has lodged a detainer against a prisoner in another State can secure the prisoner's presence for disposition of the outstanding charges. Once he has filed a detainer against the prisoner, the prosecutor can have him made available by presenting to the officials of the State in which the prisoner is incarcerated "a written request for temporary custody or availability . . . ."
>
> * * *
>
> Unlike a writ of habeas corpus ad prosequendum issued by a federal district court, a detainer may be lodged against a prisoner on the initiative of a prosecutor or law enforcement officer. Rather than requiring the immediate presence of the prisoner, a detainer merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his release from prison. Further action must be taken by the receiving State in order to obtain the prisoner.

*Id.* at 343, 351-52, 358 (footnotes omitted) (emphasis added).

At the hearing on appellant's motion to dismiss, the judge found:

> [T]here was no agreement between Maryland and Pennsylvania, whereby Pennsylvania was honoring a temporary, a request from Maryland for temporary custody. And there was no Maryland request to Virginia for temporary custody.
>
> * * *
>
> . . . I conclude from this evidence or presentation that the fact is that Mr. Southall, whether he belongs here or not, is not here as a result of a request for temporary custody. So therefore, the time limit in subsection c of section 8-406, or article 4 of the interstate act isn't triggered.

The record supports the motion judge's conclusion that Maryland officers never made a demand that served as the triggering event under § 8-406(a), which requires that "a written request for temporary custody or availability" be presented "to the appropriate authorities of the state in which the prisoner is incarcerated." Although a detainer was lodged by Charles County with the authorities in Virginia (the Henrico County jail), no request for temporary custody pursuant to § 8-406 was ever made. Further, there is no evidence in the record that

11

> Maryland ever initiated any communication with Pennsylvania regarding the appellant. There is simply no evidence that any "written request" for temporary custody pursuant to the [Detainer Agreement] was ever made of either the Virginia or Pennsylvania authorities. Therefore, the conclusion of the Circuit Court for Charles County that the 120-day limit of the [Detainer Agreement] was not triggered in this case was legally correct, as was its decision to decline to dismiss appellant's charges on the basis of a violation of § 8-406(c).

*Southall*, No. 2727, at *5–8.

The Detainer Agreement provides for two different methods of request for a temporary change in custody. A prisoner may request the change for purposes of addressing an untried indictment, information, or complaint under Art. III, in which case extradition is waived; or a prosecutor may initiate the request under Art. IV of the act. *See Cuyler v. Adams*, 449 U.S. 433, 444 (1981).

> Article IV of the Agreement provides the procedure by which the prosecutor in the receiving State may initiate the transfer. First, the prosecutor must file with the authorities in the sending State written notice of the custody request, approved by a court having jurisdiction to hear the underlying charges. For the next 30 days, the prisoner and prosecutor must wait while the Governor of the sending State, on his own motion or that of the prisoner, decides whether to disapprove the request. If the Governor does not disapprove, the prisoner is transferred to the temporary custody of the receiving State where he must be brought to trial on the charges underlying the detainer within 120 days of his arrival. Again, if the prisoner is not brought to trial within the time period, the charges will be dismissed with prejudice, absent good cause shown.

*Id.* (footnote omitted). The facts delineated by the state court show no violation of the Detainer Agreement because neither the prosecutor nor Southall invoked its protections. State court findings are entitled to substantial deference here. *See* 28 U.S.C. § 2254(e)(1). Southall has failed to show that the state court determination was an incorrect or an unreasonable application of state or federal law. Thus, even if his claim were cognizable on federal habeas review, it provides no cause for relief.

A habeas petitioner has no absolute entitlement to appeal a district court's denial of his motion. *See* 28 U.S.C. § 2253(c)(1). A certificate of appealability ("Certificate") may be issued where "the applicant has made a substantial showing of the denial of a *constitutional* right." 28 U.S.C. § 2253(c)(2) (emphasis added). Southall's claim for habeas relief is based upon his contention that his *statutory* rights under the Detainer Agreement were violated. Therefore, a Certificate must be denied in this case.[3] *Marshall v. Hendricks,* 307 F.3d 26, 80–81 (3d Cir. 2002) (a Certificate cannot be granted on a statutory, non-constitutional claim).

For the reasons stated herein, the petition will be denied and dismissed.

A separate order follows.

Dated: November 2, 2015

/S/
Paul W. Grimm
United States District Judge

---

[3] Denial of a Certificate in the district court does not preclude Southall from requesting a Certificate from the appellate court.